UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| UNITED STATES OF AMERICA, | No. 13-cr-192(2) (RHK/LIB) |
|---|---|
| v. | **REPORT AND RECOMMENDATION** |
| (2) Ronalda Myra Smith, | |
| Defendant. | |

---

This matter came before the undersigned United States Magistrate Judge upon Defendant's Motion to Suppress Statements. [Docket No. 46]. The case has been referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a hearing on September 4, 2013, regarding the Defendant's motions for discovery[1] and suppression. For reasons outlined below, the Court recommends that Defendant's Motion to Suppress Statements [Docket No. 46], be **DENIED**.

## I. BACKGROUND

Ronalda Myra Smith ("Defendant Smith") was indicted on July 23, 2013, and made the present Motion to Suppress Statements on August 12, 2013. Defendant Smith and her co-Defendant, Melanie Rose Benais ("co-Defendant Benais"), are each charged with a single count of Kidnapping in violation of 18 U.S.C. § 1201(a)(2). (Indictment [Docket No. 1]).[2] The Court held an evidentiary hearing on September 4, 2013, and at that time granted the parties' request for additional time for briefing. (See Minute Entry [Docket No. 52]). Defendant Smith opted

---

[1] Defendant's discovery motions were the subject of a separate Order. [Docket No. 55].
[2] The Indictment alleges that Defendant Smith, co-Defendant Benais, and the alleged victim are all Indians, and that the alleged crime took place within the exterior boundaries of the Red Lake Indian Reservation, thus making federal jurisdiction appropriate under 18 U.S.C. §§ 1151 and 1153(a). (See Indictment [Docket No. 1]).

1

not to submit a Memorandum in Support of her suppression motion. (See Notice [Docket No. 67]); the Government submitted its Memorandum in Opposition on October 7, 2013. (Mem. Opp. [Docket No. 69). Defendant Smith is presently scheduled to appear for trial before the Hon. Richard H. Kyle on December 3, 2013. (See Order [Docket No. 62]).

## II. DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [Docket No. 46]

In her written Motion, Defendant Smith asks the Court generically to suppress "any statements alleged to have been made by" her, but neither identifies specific statements she believes should be suppressed, nor offers any reason that such statements should be suppressed. (See Docket No. 46). Defendant Smith's counsel made no specific argument with regard to suppression at the September 4, 2013, motions hearing; however, at the request of the parties, the Court provided additional time for briefing after the hearing. (See Minute Entry [Docket No. 52]). Subsequently, as noted, Defendant Smith advised the Court that she had chosen "not to file a memorandum of law in support of her Motion to Suppress statements made by her to law enforcement." (Notice [Docket No. 67]).

Because Defendant Smith has not identified any specific statements that she believes should be suppressed, and has offered no factual or legal grounds for suppression, the Court could recommend denying Defendant's Motion to Suppress Statements, [Docket No. 46], solely on the basis that Defendant has failed to meet her burden of production. United States v. Jones, No. 09-cr-260 (DWF/RLE), 2009 U.S. Dist. LEXIS 112286, at *10 (D. Minn. Oct. 30, 2009) (Erickson, C.M.J.) (citing United States v. Mims, 812 F.2d 1068, 1074 (8th Cir. 1987); and United States v. Quiroz, 57 F. Supp. 2d 805, 822-23 (D. Minn. 1999) (Mason, M.J.), adopted by 57 F. Supp. 2d 805, 811 (D. Minn. 1999) (Kyle, J.)), adopted by 2009 U.S. Dist. LEXIS 112176

(D. Minn. Dec. 2, 2009) (Frank, J.). "Nonetheless, in an abundance of caution, we proceed with address[ing] the merits of the Defendant's Motion . . . ." Id. (citing United States v. Edwards, 563 F. Supp. 2d 977, 995 (D. Minn. 2008) (Mayeron, M.J.), adopted by 563 F. Supp. 2d 977, 984 (D. Minn. 2008) (Frank, J.).

## A. Facts[3]

### 1. Statements made June 13, 2013, outside Defendant Smith's residence

On June 13, 2013, Red Lake Police Sergeant Harlan Joseph Johnson ("Sgt. Johnson") had begun investigating the alleged kidnapping of S.N.[4] when S.N. mentioned that a "Ronalda" had been involved. (Tr. at 34:17).[5] While at the residence of co-Defendant Benais with Red Lake Criminal Investigator Paul Smith ("Investigator Smith"),[6] Sgt. Johnson was advised that "Ronalda" was Ronalda Smith, the Defendant in the present case, and he was told where Defendant Smith lived. (Id. at 34:18-20). Sgt. Johnson and Investigator Smith then proceeded to Defendant Smith's residence, arriving at approximately 5:00 a.m. (Id. at 35:12-13; at 57:1-3).

When Sgt. Johnson and Investigator Smith arrived at Defendant Smith's residence, the Defendant came outside and they spoke with her outdoors in the driveway. (Id. at 35:14-25 –

---

[3] The facts in this Part are derived from the testimony of Red Lake Police Sergeant Harlan Joseph Johnson ("Sgt. Johnson"), Red Lake Criminal Investigator Paul Smith ("Investigator Smith"), and FBI Special Agent Ogden ("SA Ogden") at the September 4, 2013, motions and evidentiary hearing, and from the following Exhibits, which were offered, and the Court accepted into evidence, for purposes of the present Motions:
- **Government's Exhibit 4**: an FBI Advice of Rights form, signed and executed by Defendant at the Red Lake Jail on June 18, 2013, at 1:21 p m., and witnessed by SA Ogden and by Investigator Smith;
- **Government's Exhibit 5**: a compact disc containing an audio recording of the first portion of SA Ogden's and Investigator Smith's interview with Defendant at the Red Lake Jail on June 18, 2013, beginning at approximately 1:19 p m., and running approximately 11 minutes; and
- **Government's Exhibit 6**: a compact disc containing an audio recording of the second portion of SA Ogden's and Investigator Smith's interview with Defendant at the Red Lake Jail on June 18, 2013, beginning at approximately 1:37 p m., and running approximately 12 minutes.

[4] In order to protect her privacy, the Court refers to the alleged victim by her initials.
[5] Citation to the Transcript ("Tr.") is to transcript of the digital recording of the September 4, 2014, motions hearing. [Docket No. 65].
[6] Investigator Smith testified at the September 4, 2013, motions hearing that he was unaware of any relationship between himself and Defendant. (Tr. 91:5-11).

36:1-6).[7] Sgt. Johnson wore a full uniform, including a sidearm, and drove a marked patrol car; Investigator Smith wore street clothes with his badge on a lanyard, and drove an unmarked vehicle. (Id. at 61:6-17; at 62:12-19). Sgt. Johnson and Investigator Smith did not read Defendant Smith her Miranda rights.[8] (Id. at 60:14-15). Sgt. Johnson asked Defendant Smith her whereabouts on the previous day, June 12, 2013, and when she had last seen co-Defendant Benais. (Id. at 36:10-11, 22-24). At that time, Sgt. Johnson decided not to arrest or detain Defendant Smith, and he and Investigator Smith left the Defendant's residence. (Id. at 36:25 – 37:1-3, 11-14).

### 2. Statements made June 18, 2013, at the Red Lake Jail

Defendant Smith was arrested on June 18, 2013, and she was interviewed later that day by SA Ogden and Investigator Smith in an interview room at the Red Lake Jail, where Defendant was then in custody. (Id. at 106:5-22; see also Gov't's Exs. 4-6). SA Ogden did not observe any signs that Defendant was intoxicated or otherwise under the influence of alcohol or drugs. (Tr. at 110:10-11). SA Ogden recorded the interview, including the beginning, and he is heard reading Defendant Smith the FBI's standard "Advice of Rights" form. Defendant Smith then signed and executed that form, waiving her right to counsel during questioning. (Id. at 107:7-16; at 108:1-15; at 108:23-25 – 109:1-7; see also Gov't's Exs. 4-6). SA Ogden described Defendant Smith's initial answers to his questions as "short" and "angry responses." (Tr. at 123:12-15).

At one point during the interview, SA Ogden determined that the interview had concluded, and he stopped the recording; however, when Defendant Smith indicated that she had more she wanted to say, SA Ogden started a second recording. (Id. at 109:8-18). During the

---

[7] Sgt. Johnson later testified that the conversation might have taken place on the wheelchair ramp attached to Defendant's residence, but that he believed it took place out in the driveway closer to his patrol vehicle. (Tr. at 58:19-22).
[8] See Miranda v. Arizona, 384 U.S. 436 (1966).

4

break between the two portions of the interview, which lasted a few minutes, SA Ogden told Defendant Smith that this might be her only opportunity to tell him her story, and Defendant stated that she would continue with the interview. (Id. at 111:17-23; at 112:20-22; at 125:11-12). Upon starting the second portion of the interview, SA Ogden asked Defendant Smith if she still understood her rights and if she wanted to continue the interview, and Defendant answered in the affirmative. (Gov't's Ex. 6; see also Tr. at 113:10-11). Defendant was cooperative and answered SA Ogden's and Investigator Smith's questions during both portions of the interview, and there is no evidence that SA Ogden or Investigator Smith made any promises to or threats against Defendant. (Tr. at 110:16-23; at 112:7-12; at 113:7-9; Gov't's Exs. 5-6).

### B. Discussion

With respect to the statements Defendant Smith made on June 13, 2013, outside her residence, the questions for the Court are (1) whether Defendant was "in custody" for purposes of Miranda, and (2) whether her statements were coerced or otherwise involuntary. With respect to the statements Defendant Smith made on June 18, 2013, at the Red Lake Jail, the questions for the Court are (1) whether she knowingly, intelligently, and voluntarily waived her Miranda rights, and (2) whether her statements were coerced or otherwise involuntary.

#### 1. Statements made June 13, 2013, outside Defendant Smith's residence

##### a. Standard of Review

"[Miranda] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Miranda warnings are required for official interrogations where a person has been

"taken into custody or otherwise deprived of [her] freedom of action in any significant way." Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444). However, law enforcement officers "are not required to administer Miranda warnings to everyone whom they question." Oregon v. Mathiason, 429 U.S. 492, 495 (1977). "Miranda warnings are required only where there has been such a restriction on a person's freedom as to render [her] in custody." Id. (internal quotation omitted).

The Eighth Circuit considers six (6) factors when determining whether a suspect is in custody:

> (1) Whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Sanchez, 676 F.3d 627, 630 (8th Cir. 2012) (quoting United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990)). "The first three indicia are mitigating factors which, if present, mitigate against the existence of custody at the time of questioning. Conversely, the last three indicia are aggravating factors which, if present, aggravate the existence of custody." United States v. Axsom, 289 F.3d 496, 500-01 (8th Cir. 2002). Those factors, however, are not exclusive; "[t]he analysis depends upon a review of the totality of circumstances, and '[t]he ultimate test is whether a reasonable person in that position would have felt free to end the interview.'" Sanchez, 676 F.3d at 630-31 (quoting United States v. Aldridge, 664 F.3d 705, 711 (8th Cir. 2011)).

The ultimate determination is based on the totality of the circumstances, with none of the

above factors being dispositive, and a particularly strong showing on one factor may compensate for a deficiency on another factor. Griffin, 922 F.2d at 1347, 1349. The key inquiry is whether there was a formal arrest or restraining of a defendant's movement to the degree associated with a formal arrest. Stansbury, 511 U.S. at 322. "In answering this question, we look at the totality of circumstances while keeping in mind that the determination is based 'on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'" United States v. LeBrun, 363 F.3d 715, 720 (8th Cir. 2004) (en banc) (quoting Stansbury, 511 U.S. at 322-23), cert. denied LeBrun v. United States, 543 U.S. 1145 (2005)). The Court must examine "both the presence and extent of physical and psychological restraints placed upon the person's liberty during the interrogation in light of whether a reasonable person in the suspect's position would have understood his situation to be one of custody." Axsom, 289 F.3d at 500 (internal quotation marks omitted).

Additionally, "[w]hether or not Miranda is implicated, the Supreme Court has recognized that, in order for a confession to be admitted into evidence, it must be voluntary if it is to satisfy the Fifth Amendment's right against self-incrimination." United States v. Pankey, No. 07-cr-214, 2007 U.S. Dist. LEXIS 86785, at *11 (D. Minn. Oct. 25, 2007) (DWF/RLE) (Erickson, C.M.J.) (citing Dickerson v. United States, 530 U.S. 428, 433-34 (2000)), adopted by 2007 U.S. Dist. LEXIS 84319 (D. Minn. Nov. 13, 2007) (Frank, J.). When analyzing voluntariness, the Court considers "whether a defendant's will was overborne by the circumstances surrounding the giving of a confession." Dickerson, 530 U.S. at 434. Furthermore, a statement is involuntary if it "was extracted by threats, violence, or . . . promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." United States v. Gallardo-

7

Marquez, 253 F.3d 1121, 1123 (8th Cir. 2001) (quotations and citations omitted; ellipses in original).

Whether a defendant's will has been overborne is determined by looking at the totality of the circumstances, including both the conduct of law enforcement in exerting pressure to confess on the defendant and the defendant's ability to resist that pressure. United States v. Pierce, 152 F.3d 808, 812 (8th Cir. 1998). Courts consider a multitude of factors including the age of the defendant, the level of education of the defendant, the lack of advice to the accused on his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973); see also United States v. Brave Heart, 397 F.3d 1035, 1041 (8th Cir. 2005) (stating that "officers elicit confessions through a variety of tactics, including claiming not to believe a suspect's explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices. . . . None of these tactics render a confession involuntary, however, unless the overall impact of the interrogation cause the defendant's will to be overborne" (quotations and citation omitted).).

### b. Analysis

Upon a review of the Griffin factors and the totality of the circumstances, the Court finds that Defendant Smith was not "in custody" when she spoke with Sgt. Johnson and Investigator Smith outside of her residence on June 13, 2013.

The first and second Griffin factors do not weigh heavily in the Court's analysis.

The first factor does not mitigate against a finding of custody, because there is no evidence in the record that, during the encounter at and outside of Defendant Smith's residence,

8

she was told that her participation in questioning was voluntary, or told that she was free to leave or to request that the officers leave, or told that she was not considered under arrest. At the same time, there is also no evidence in the record to suggest that the officers ever told Defendant Smith that she was required to answer questions. Thus, the first Griffin factor does not move the needle one way or the other. See United States v. Mottl, 946 F.2d 1366, 1370 (8th Cir. 1991) (although FBI agents neither told defendant that he could terminate the interview at will, nor told him that they did not intend to arrest him, the remaining factors allowed the district court to find the interview was not custodial); United States v. Wallace, 323 F.3d 1109, 1112-13 (8th Cir. 2003) (interview was not custodial despite agents' failure to inform defendant that questioning was voluntary, that she was free to leave, or that she was not under arrest).

The second factor somewhat favors a finding that Defendant Smith was not in custody. On the present record, the Court cannot determine whether Defendant Smith had *unrestrained* freedom of movement while she spoke with the officers outside her residence, in part, because she did not attempt to move about. See Sanchez, 676 F.3d at 631 (where defendant did not attempt to leave, second factor is unclear because "it is unclear what would have happened if she had"); United States v. Ollie, 442 F.3d 1135, 1138 (8th Cir. 2006) (where defendant "never tried to move about or leave . . . it is impossible to determine if [he] retained his freedom of movement"). However, the Court can state on the present record that Defendant's "freedom of action" as she stood outside of her own residence was not "curtailed to a degree associated with formal arrest." Stansbury, 511 U.S. at 322; Griffin, 922 F.3d at 1349. Therefore, the second factor weighs slightly in favor of a finding of non-custody.

The Court in the present case looks mostly to the third Griffin factor, and it concludes that Defendant here voluntarily acquiesced to questioning. Defendant Smith came to the door,

9

opened the door, and voluntarily went outdoors to speak with Sgt. Johnson and Investigator Smith outside her residence. Although Defendant Smith did not initiate questioning, the Eighth Circuit has made it clear that the question of who initiated the interview is not dispositive for this factor, much less for the broader question of whether the interview was custodial:

> In considering the third mitigating factor, the district court correctly found that Axsom did not initiate or arrange for the questioning. *However, the court failed to analyze the disjunctive prong of the third mitigating factor – whether the defendant voluntarily acquiesced to requests by federal agents to answer questions.*

Axsom, 289 F.3d at 501 (emphasis added).

In the present case, Defendant Smith was inside her residence when Sgt. Johnson and Investigator Smith arrived, and she voluntarily went outside to speak with them. Defendant Smith could have chosen not to come to the door; or she could have listened at the door and refused to answer the officers' questions; or she could have refused to come outside; or she could have come outside and refused to answer the officers' questions. Instead, she voluntarily chose to leave her house and answer the officers' questions. Consequently, the Court finds that the third mitigating factor weighs heavily in favor of a finding that the interview was not custodial.

Additionally, none of the three aggravating Griffin factors weighs in favor of a finding that Defendant Smith was in custody.

The fourth factor does not weigh in favor of custody, because there is no evidence that the officers used strong-arm tactics or deceptive stratagems. The officers did not display their weapons, nor did they yell at or otherwise threaten Defendant. See Axsom, 289 F.3d at 502 (finding no strong-arm tactics where officers "did not adopt a threatening posture toward [defendant], display their weapons, or make a physical show of force during the questioning"); United States v. Brown, 990 F.2d 397, 400 (8th Cir. 1993) (finding no strong-arm tactics where

10

investigators "did not yell at [defendant], [or] threaten him"). Nor did the officers use any deceptive stratagems, such as the good-cop, bad-cop routine. See Id. (citing "good-cop, bad-cop routine" as example of deceptive stratagem); United States v. Carter, 884 F.2d 368, 372 (8th Cir. 1989) ("Mutt and Jeff" technique contributed to police-dominated atmosphere (citing Miranda, 384 U.S. at 452, 455)). The officers "asked straightforward questions and [Defendant] gave straightforward answers." Axsom, 289 F.3d at 502 (internal quotations omitted). Finally, the officers did not make any promises to Defendant Smith. Thus, the fourth factor does not weigh in favor of a finding of custody.

Nor does the fifth factor weigh in favor of a finding of custody, because the interview was not police dominated. In considering this factor, courts examine such considerations as the place and length of the interview. Griffin, 922 F.2d at 1348, 1352. Defendant Smith was just outside her own home throughout the interview, and in the Eighth Circuit there is a presumption that an interview at the defendant's home is not police dominated. United States v. Czichray, 378 F.3d 822, 826-27 (8th Cir. 2004). In Griffin, the Eighth Circuit indicated that an interview in a defendant's home might be police dominated when, for example, officers isolate the defendant from family or friends who might offer support, or when officers otherwise "assert[] their dominion over the interrogation site." Griffin, 922 F.2d at 1355.[9] However, none of those factors are present in this case, where, during the brief interview, Defendant Smith chose to speak with the officers outside her residence, and remained in close proximity to her residence throughout the questioning. Although Sgt. Johnson was armed and in uniform and arrived in his

---

[9] See also Id. at 1355, n.15:
>It is the accepted logic that an interrogation in familiar surroundings such as one's home softens the hard aspects of police interrogation and moderates a suspect's sense of being held in custody. Nonetheless, it is not difficult to envision that a suspect's sense of captivity can actually be intensified by the intrusive and intimidating environment created when agents of the law take control of a person's private residence. After all, a person can not reasonably expect to be free anywhere if not within the refuge of his home.

(Internal citation omitted). However, another panel of the Eighth Circuit subsequently questioned the Griffin court's holding that the interview in that case was police dominated. Czichray, 378 F.3d at 827-28.

11

squad car, the mere fact that the interview was conducted by a uniformed officer is insufficient to warrant a finding that the interview was police dominated. See, e.g., United States v. Hephner, 103 Fed. Appx. 41, 44, 48 (8th Cir. 2004) (interview by uniformed trooper in trooper's vehicle was not police dominated); United States v. Mehilove, No. 11-cr-219 (SRN/SER), 2011 U.S. Dist. LEXIS 121247, at *12 (Sept. 15, 2011) (Rau, M.J.) ("The presence of weapons and inspector uniforms did not constitute a police-dominated atmosphere."), adopted by 2011 U.S. Dist. LEXIS 117583 (Oct. 12, 2011) (Kyle, J.). In fact, where courts have found that this factor weighs in favor of custody, the atmosphere was far more police dominated than in the present case.[10] Thus, the fifth factor does not weigh in favor of a finding of custody.

Finally, the sixth Griffin factor is the easiest to resolve: Defendant Smith was not arrested at the conclusion of the June 13, 2013, interview and, therefore, this factor does not weigh in favor of a finding that she was in custody.

Upon the totality the circumstances, in particular Defendant Smith's voluntarily acquiescence to questioning outside her own residence, the Court finds that Defendant Smith was not in custody when she spoke with Sgt. Johnson and Investigator Smith outside of her residence on June 13, 2013. See Griffin, 922 F.2d at 1349 (strong showing on one factor may make up for deficiency in other factors). Because Defendant Smith was not in custody, the officers were not required to provide her with a Miranda warning, and therefore, the fact that Defendant was not given a Miranda warning before questioning is not sufficient reason to suppress the statements she made to Sgt. Johnson and Investigator Smith outside of her residence.

---

[10] See, e.g., Sanchez, 676 F.3d at 631 (interview was police dominated when defendant was taken to small room in courthouse basement normally used by prosecutors and isolated with two law enforcement officers); Griffin, 922 F.2d at 1354-55 (interview was police dominated when officers confronted defendant inside his home and isolated him from his parents);

12

Additionally, there is no evidence in the present record to suggest that Defendant Smith was in any way coerced into speaking with Sgt. Johnson and Investigator Smith outside her residence on June 13, 2013, or that her statements that day were in any other way involuntary.

### 2. Statements made June 18, 2013, at the Red Lake Jail

There is no question that Defendant was "in custody" for purposes of <u>Miranda</u> when she was interviewed by SA Ogden and Investigator Smith at the Red Lake Jail on June 18, 2013 (the "jail interview"). The record before the Court indicates that Defendant Smith was read a <u>Miranda</u> warning before the June 18, 2013, jail interview, and that she executed signed a waiver before the interview. Thus, the first question for the Court is whether Defendant knowingly and voluntarily waived her <u>Miranda</u> rights; and, in light of the interruption between the two portions of that interview, whether Defendant was coerced or her statements were otherwise involuntary during the second portion of the interview.

#### a. Standard of Review[11]

A defendant's waiver of her <u>Miranda</u> rights must be made voluntarily, knowingly, and intelligently. <u>Miranda</u>, 384 U.S. at 444. When determining whether a waiver was made voluntarily, knowingly, and intelligently, the court must inquire whether:

> First, the waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Second, the suspect must have waived [her] rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."

<u>United States v. Vinton</u>, 631 F.3d 476, 483 (8th Cir. 2011) (internal citations omitted) (quoting <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986)).

"The government has the burden of proving the validity of the Miranda waiver by a preponderance of the evidence." <u>United States v. Haggard</u>, 368 F.3d 1020, 1024 (8th Cir. 2004).

---

[11] The standard of review for coercion is provided in Part II.B.1.a, <u>supra</u>.

The court "must examine both 'the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess.'" United States v. Syslo, 303 F.3d 860, 866 (8th Cir. 2002) (quoting United States v. McClinton, 982 F.2d 278, 282 (8th Cir. 1992)). The United States Supreme Court has explained "that coercive police activity is a necessary predicate to . . . finding that a confession is not 'voluntary,'" Colorado v. Connelly, 479 U.S. 157, 167 (1986), and the Eighth Circuit has read that holding to mean "that police coercion is a necessary prerequisite to a determination that a waiver was involuntary and not as bearing on the separate question whether the waiver was knowing and intelligent." Turner, 157 F.3d at 555 (emphasis in original) (quoting United States v. Bradshaw, 935 F.2d 295, 299 (D.C. Cir. 1991)).

In determining whether a waiver was voluntary, knowing, and intelligently made, a court "looks at the totality of the circumstances and must determine whether the individual's will was overborne." Syslo, 303 F.3d at 866.

   b. **Analysis**

Based on the record in the present case, the totality of the circumstances indicates that Defendant Smith, after being advised of her Miranda rights and acknowledging that she understood those rights, did knowingly, voluntarily, and intelligently waive those rights.

There is no evidence of any "coercive police activity" by the interviewing agents before or during the jail interview. Although SA Ogden told Defendant Smith during the brief break in the interview that the interview might be her last chance to make a statement before the file was forwarded to a federal prosecutor, this statement "did not amount to a promise that no charges would be brought if [Defendant] spoke to him, or to a promise of leniency." United States v. Murdock, 667 F.3d 1302, 1307 (D.C. Cir. 2012); cf. Arizona v. Fulminante, 499 U.S. 279, 288

(defining coercion as by means of threats of physical violence).[12] Because such coercive activity is a prerequisite to finding that a waiver was involuntary, the Court cannot find that Defendant Smith's waiver was involuntary. Thus, the remaining question is whether Defendant's waiver was knowing and intelligent.

There is no evidence that Defendant Smith appeared intoxicated or otherwise under the influence of alcohol or drugs during the jail interview. Nor is there any other evidence in the record that would suggest that Defendant Smith's waiver executed at the outset of the jail interview was not executed knowingly and intelligently. The recordings of both portions of the interview demonstrate that Defendant Smith answered the officers' questions, and give no indication that she either did not understand her rights, or that she was not a voluntary participant in the interview. (Gov't's Exs. 5-6).

Finally, again, there is no evidence in the record to suggest that Defendant was in any way coerced into speaking with SA Ogden and Investigator Smith at the Red Lake Jail on June 18, 2013, or that her statements were in any other way involuntary.

3. **Summary**

Upon the totality of the circumstances, the Court finds that (1) Defendant Smith was neither "in custody" nor coerced when she spoke with Sgt. Johnson and Investigator Smith outside of her residence during the morning of June 13, 2013; and (2) that Defendant Smith knowingly, intelligently, and voluntarily waived her Miranda rights before the jail interview on June 18, 2013, at the Red Lake Jail, and that her statements during that interview were not

---

[12] See also United States v. Gamez, 301 F.3d 1138, 1144-45 (9th Cir. 2002) (investigator's "comment that it would 'behoove' [the defendant] to disclose what he knew about [the crime] and that this was his 'last chance' to come forward does not amount to coercion"); DeHerrera v. LeMaster, 194 Fed. Appx. 570, 572 (10th Cir. 2006) (district court's holding that, after he was told it was his "last chance . . . to help yourself out," his statement was voluntary, was not contrary to law)

15

coerced. Accordingly, the Court recommends that Defendant Smith's Motion to Suppress Statements, [Docket No. 46], be **DENIED**.

## III. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Smith's Motion to Suppress Statements, [Docket No. 46], be **DENIED**.

Dated: October 18, 2013
s/Leo I. Brisbois
LEO I. BRISBOIS
United States Magistrate Judge

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 1, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within **fourteen days** of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.